IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA A.[1],
f/k/a PATRICIA M.,

    Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

Case No. 3:18-cv-01884-MO

OPINION AND ORDER

MOSMAN, J.,

Plaintiff Patricia A. challenges the Commissioner's decision denying her claim for disability insurance benefits and supplemental security income. I have jurisdiction under 42 U.S.C. § 405(g) to review the Administrative Law Judge's decision. For the reasons stated below I AFFIRM the ALJ's decision.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for Title II Disability Insurance Benefits ("DIB") on January 26, 2015, and for Title XVI Supplemental Security Income ("SSI") on June 23, 2017, alleging disability beginning January 1, 2007. Tr. 158-59, 185-86. Plaintiff's claim was initially denied on

---

[1]     In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

June 2, 2015, and upon reconsideration on December 4, 2015. Tr. 89-94, 96-98. On June 26, 2017, Plaintiff attended a hearing before Administrative Law Judge ("ALJ") Rudolph Murgo. Tr. 41. At the hearing, Plaintiff amended her alleged onset date to January 1, 2015. Tr. 60. On October 4, 2017, Judge Murgo issued a decision finding that Plaintiff was not disabled. Tr. 34-35. Plaintiff appealed that decision on November 15, 2017, and that appeal was denied by the Appeals Council on August 28, 2018. Tr. 1-3, 154-55. Plaintiff now comes before this Court seeking to overturn the ALJ's decision.

## FACTS

Plaintiff was born in 1958 and was 56 years old at the time she alleges her disability began on January 1, 2015. She has past work experience as a cashier, a caregiver, a dental assistant, and as a customer service representative. Tr. 57. Plaintiff has suffered from arthritis and Hepatitis C, among other ailments. *See* Tr. 199.

## THE ALJ'S FINDINGS

The ALJ made various findings along the five-step sequential evaluation process established by the Secretary of Health and Human Services. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920 (establishing the five-step evaluative process for SSI claims). Tr. 24-34.

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity between April 1, 2015, and June 30, 2015 (the second quarter of 2015), but has not engaged in substantial gainful activity since. Tr. 24. He noted that claimant's reported earnings fell from $3,797 in the second quarter of 2015, to $1,940 in the third quarter of 2015, and then to $33 in the fourth quarter of 2015. *Id.*

At step two, the ALJ found that Plaintiff had the following severe impairments: inflammatory arthritis; chronic liver disease; and spine disorders. Tr. 24. The ALJ found that Plaintiff's diagnoses of depression and anxiety were non-severe. Tr. 25.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 26.

Between steps three and four, the ALJ described Plaintiff's Residual Functional Capacity ("RFC") as follows:

> Claimant [can] . . . perform light work . . . except: She can lift/carry 20 pounds occasionally, and lift/carry 10 pounds frequently. She can stand/walk for six hours total in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders/ropes/scaffolds. She is limited to frequent bilateral handling and fingering. She should avoid all exposure to hazards.

Tr. 30.

At step four, the ALJ found that Plaintiff could perform her past relevant work as a cashier, dental assistant, and customer service representative. Tr. 34.

Because the ALJ found that Plaintiff could perform her past relevant work, he did not conduct a step five analysis, and concluded that Plaintiff was not disabled as defined by the Social Security Act. Tr. 34.

## STANDARD OF REVIEW

I review the ALJ's decision to ensure the ALJ applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (explaining that the ALJ's decision must be supported by substantial evidence and not based on legal error). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter*

*v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A judge must uphold the Commissioner's decision if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882.

## DISCUSSION

Plaintiff makes three main arguments for why the ALJ erred in reaching his finding that Plaintiff was not disabled: (1) the ALJ improperly rejected the opinions of reviewing doctors K. McAuliffe, M.D., and Lauhna Ude, Ph.D.; (2) the ALJ failed to properly assess Plaintiff's recent past work; and (3) the ALJ improperly assessed Plaintiff's depression and anxiety at Step Two and thus failed to incorporate relevant limitations into her RFC. Pl.'s Opening Br. [ECF 12] at 5. Because of these purported errors, Plaintiff argues that the ALJ's decision should be reversed and remanded for the immediate payment of benefits. *Id.* at 17.

Plaintiff's first two arguments point to errors in the ALJ's RFC assessment. Her third argument attacks the ALJ's decision at step two of the evaluative process (which purportedly also led to error in the RFC assessment). I will first address Plaintiff's arguments related to step two, before turning to her arguments concerning the RFC assessment. In short, I find that all three of Plaintiff's main arguments fail and that the ALJ's decision is supported by substantial evidence.

### I. The ALJ's Decision at Step Two

At step two of the evaluative process, the ALJ considered Plaintiff's impairments related to her depression and anxiety and concluded that these impairments were "non-severe." Tr. 25. In summarizing his conclusions, the ALJ stated that:

> [T]he treatment records state that [Plaintiff's] mental symptoms from [depression and anxiety] were likely secondary to her interferon treatment for her hepatitis C. Mental status examinations of the [Plaintiff] also noted she was clear and intact. Finally, there is no evidence these impairments, singly or in combination, cause any vocational limitations.

Tr. 25 (citations omitted).

The ALJ then laid out a detailed analysis of the "four broad areas of mental functioning," or the "paragraph B" criteria, which supported the ALJ's conclusion that Plaintiff's depression and anxiety did not result in severe impairments. For example, the ALJ assessed Plaintiff's ability to "interact[] with others," one of the four functional areas. The ALJ described that:

> In this area, the [Plaintiff] has mild limitation. She states she has never been fired or laid off from a job because of problems getting along with other people. The [Plaintiff] also noted that she worked at Marquis, which involved providing caregiving activities, during the period she is alleging disability. She reports that she shops in stores for food once every other week for one hour.

Tr. 25 (citations omitted).

Plaintiff, in claiming the ALJ erred at step two, does not point to any affirmative evidence that demonstrates Plaintiff's depression and anxiety caused any work-related functional impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the burden remains on the claimant at step two). Rather, Plaintiff singles out one statement made by the ALJ—that Plaintiff's "mental symptoms . . . were likely secondary to her interferon treatment for her hepatitis"—and argues that that statement is incorrect and that it constitutes harmful legal error.

Taking this statement to mean that some of Plaintiff's mental health symptoms were due to interferon treatment rather than an underlying mental health condition, Plaintiff convincingly demonstrates that this statement is inaccurate because there is no evidence that Plaintiff was ever

5 – OPINION AND ORDER

treated with interferon. *See* Pl.'s Br. [12] at 15-16. Indeed, the Commissioner makes no attempt to defend the accuracy of that particular statement. *See* Def. Br. [14] at 10-12.

But Plaintiff fails to demonstrate how this inaccuracy constitutes error, let alone harmful error. One can imagine a scenario where such an inaccuracy might be harmful. For example, if the ALJ thought that a claimant's mental health symptoms were severe but discounted them because he erroneously thought the symptoms were the temporary result of interferon treatment—rather than the result of an underlying condition that was likely to persist—such an error could be harmful. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (explaining that an error is harmless only if it "was inconsequential to the ultimate nondisability determination"). But that is not what happened here. Rather, the ALJ discusses at length why the mental health limitations Plaintiff associates with her depression and anxiety—regardless of their underlying cause—do not rise to the level of severe impairments. *See* Tr. 25-26. Plaintiff points to no errors in this aspect of the ALJ's reasoning. Therefore, I conclude that the ALJ did not err at step two.

## II. The ALJ's Residual Functional Capacity Assessment.

In making his assessment of Plaintiff's RFC, the ALJ considered Plaintiff's alleged impairments, symptoms, and functional limitations. The ALJ concluded that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 31. In other words, the ALJ found that Plaintiff's testimony about the severity of her symptoms was not reliable.

An ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Here, the ALJ provides two overarching reasons for why he found Plaintiff's statements to be unreliable. First, the ALJ found that "[t]he medical record does not support the severity of the [Plaintiff]'s alleged physical limitations." Tr. 31. Second, the ALJ found that "[Plaintiff]'s work activities and daily activities are inconsistent with the severity of her alleged limitations . . . ." Tr. 31, 32.

Plaintiff's first argument—that the ALJ improperly discounted the opinions of Dr. McAuliffe and Dr. Ude—attacks the ALJ's conclusion that the medical record does not support the Plaintiff's testimony. I discuss this argument first, below. Plaintiff's second argument—that the ALJ failed to properly assess Plaintiff's recent past work—does not cleanly map onto the ALJ's findings about Plaintiff's work and daily activities being inconsistent with the severity of her alleged limitations. I discuss this argument second. I conclude that Plaintiff's arguments fail, that the ALJ did not commit harmful error, and that he gave clear and convincing reasons for rejecting the claimant's testimony about the severity of her symptoms.

### A. The ALJ's Decision to Give "Limited Weight" to the Opinions of Dr. McAuliffe and Dr. Ude

#### 1. Background

Among the medical evidence reviewed by the ALJ were opinions from several different doctors, to which the ALJ assigned various weight. These doctors, the weight assigned to them by the ALJ, and their treatment relationship to Plaintiff are summarized briefly here:

1. Jacqueline Farwell, M.D. and Linda Jensen, M.D.—reviewing doctors from Disability Determination Services ("DDS") of SSA. The ALJ assigned "great weight" to their opinions.

2. Andrew Harbison, M.D.—a doctor who has treated Plaintiff since 2014. The ALJ assigned "some weight" to his opinion.

3. K. McAuliffe, M.D.—a reviewing doctor. The ALJ assigned "limited weight" to his opinion.

4. Lauhna Ude, Ph.D.—a reviewing doctor. The ALJ assigned "limited weight" to her opinion.

Tr. 32-33.

Dr. McAuliffe, after completing a review of Plaintiff's medical and vocational rehabilitation records, opined that Plaintiff "may have unscheduled absenteeism; she should avoid repetitive or forceful hand and wrist movements, and pressure against the thumb side of the hands and fingers . . . and, she should avoid heavy or repetitive lifting and reaching above shoulder level." Tr. 32, 720-21.

The ALJ gave limited weight to Dr. McAuliffe's opinion because he thought that 1) it was not based on objective evidence, 2) it was contrary to Dr. Harbison's report, 3) it was contrary to Dr. Farwell's and Dr. Jensen's report, and 4) the opinion did not analyze Plaintiff's work activities and daily activities. Tr. 33.

Dr. Ude completed a review of Plaintiff's medical records, vocational records, and self-reported work history to assess Plaintiff's functional limitations related to her mental health. Dr. Ude concluded that Plaintiff is impulsive, irritable, often angry, has paranoid thinking and low motivation, and has a "chronic crisis mode." Tr. 33, 722. She also noted that Plaintiff is not a reliable historian or credible reporter. *Id.*

The ALJ gave limited weight to Dr. Ude's opinion because he thought 1) it was based on Plaintiff's subjective statements, 2) it did not take into account Plaintiff's "abilities if she followed up with consistent treatment for her impairments," and 3) because Plaintiff's work activities and daily activities "do not support the severity of the doctor's opinions." Tr. 33.

### 2. ALJ Standard for Reviewing Medical Opinion Evidence

A new set of federal regulations have recently been introduced to guide an ALJ's evaluation of medical opinion evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c and 416.920c. For claims filed before March 27, 2017, the "old" regulations apply. *See* 20 C.F.R. § 404.1527.

While there are many specific differences between the "old" and "new" regulations, the main difference is that ALJs will no longer "weigh" medical opinions; rather, they will determine which are the most "persuasive" by focusing on a variety of factors, the two most important of which are the "supportability" and "consistency" of the evidence. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, for example, there is no longer any inherent extra weight that is automatically given to treating doctors. At the end of the day, the ALJ is still engaging in the same inquiry: determining which of the various medical opinions are most probative. Only the process for how they go about doing so has changed. Arguably, the new regulations create a process that is less mechanistic or categorical in certain respects, giving the ALJ more flexibility in her explanations. *Compare* 20 C.F.R § 404.1527 *with* 20 C.F.R. § 404.1520c *and* 20 CF.R. § 416.920c.

As Plaintiff points out in her opening brief, a tricky situation is presented here. *See* Pl.'s Br. [12] at 5. Plaintiff filed her DIB claim on January 26, 2015, but did not file her SSI claim until June 23, 2017. As is typical, the ALJ consolidated both claims and dealt with them in one hearing and in one opinion. The question is what standards should the ALJ have used in evaluating the medical opinion evidence—those contained in the new regulations or those contained in the old regulations.

The new regulations state only that "[f]or claims filed . . . on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in § 404.1527 apply." 20 C.F.R. §§ 404.1520c, 416.920c. The straightforward reading of that text suggests the ALJ here should have applied the old regulations to the DIB claim and the new regulations to the SSI claim. But that would lead to the bizarre result of having the ALJ evaluate the same evidence twice using two different standards.

The ALJ in this case appears to have followed only the old regulations in assessing the medical opinion evidence. But Plaintiff argues that the differences between the old and new regulations are not dispositive here. *See* Pl.'s Br. [12] at 5. And the Commissioner makes no mention of the differing standards. *See* Def.'s Br. [15] at 4. After reading the ALJ's opinion attuned to both the old and new regulations, I agree with Plaintiff that the differences between the two are not consequential in determining whether the ALJ erred in evaluating the medical opinion evidence. Therefore, I rely on established Ninth Circuit precedent in evaluating the ALJ's decision-making with respect to the medical opinion evidence, and I cite to both the old and new regulations where relevant.

### 3. Dr. McAuliffe's Opinion

An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). When an ALJ provides multiple reasons for discrediting medical opinion evidence, and some of those reasons are erroneous, those errors are harmless so long as the ALJ provides other valid and sufficient reasons for discrediting the evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (describing that when considering an ALJ's adverse credibility determination, "the relevant inquiry . . . is not whether the ALJ would have made a

different decision absent any error . . . it is whether the ALJ's decision remains legally valid, despite such error").

As described above, the ALJ here supplies several reasons for why he gave "limited weight" to Dr. McAuliffe's opinion. Plaintiff argues that only one of these reasons—that Dr. McAuliffe's opinion conflicts with Dr. Farwell's and Dr. Jensen's (the "DDS Doctors") opinions—is factually accurate. *See* Pl.'s Br. [12] at 5-10. Moreover, Plaintiff argues that this sole accurate reason is nevertheless legally insufficient to discount Dr. McAuliffe's opinion. *Id.* The Commissioner argues that all of the reasons the ALJ cites are both accurate and valid reasons to discount Dr. McAuliffe's opinion. *See* Def.'s Br. [15] at 4-7.

I agree with Plaintiff that the first two reasons the ALJ offers do not hold up under scrutiny. First, I agree that Dr. McAuliffe does consider objective medical evidence. *See* Pl.'s Br. [12] at 7-8. He does so by reviewing Plaintiff's medical and vocational records because those records contain objective medical evidence—medical signs and laboratory findings—within them. *See, e.g.*, Tr. 720 (citing a "2012 biopsy" and "[a]bnormal red blood cell indices"). Second, I agree that Dr. McAuliffe's opinion does not contradict that of Dr. Harbison (Plaintiff's treating doctor). Dr. Harbison does not, as the Commissioner argues, indicate that therapeutic efforts *would* restore Plaintiff's health such that she could engage in full time work. Def.'s Br. [15] at 5. Rather, Dr. Harbison states that therapeutic efforts are *intended* to restore Plaintiff's health so that she can work. Tr. 604. Saying that a treatment is intended to accomplish a goal is not the same thing as predicting that it *will* accomplish that goal.

The third reason that the ALJ gives for discounting Dr. McAuliffe's testimony is that it is contrary to the opinions of the two DDS doctors. Tr. 33. Plaintiff argues that the fact that Dr. McAuliffe's opinion contradicts the opinion of the DDS doctors "is not a sufficient reason, by

itself, to reject [Dr. McAuliffe's] opinion." Pl.'s Br. [12] at 8-9. True enough. But the ALJ does provide reasons for why he values the DDS opinions more than Dr. McAuliffe's opinion. The ALJ states that the DDS doctors "are well versed and skilled in the analysis of residual functional capacity for those claiming disability through social security," whereas Dr. McAuliffe "is not a treating Doctor nor a Doctor skilled in the analysis of social security disability." Tr. 33. The first reason—that Dr. McAuliffe is not a treating doctor—is not worth very much; indeed, the DDS doctors are not treating doctors either. But the fact that the DDS doctors are comparatively well-versed in the analysis of social security disability claims is a salient one under the regulations. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (describing that "the amount of understanding of our disability programs and their evidentiary requirements that a medical source has" is a valid factor to consider); 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5) (same). Thus, I find the ALJ's decision to discount Dr. McAuliffe's opinion because it contradicts the opinions of the DDS doctors is not error.

In addition, I also find that the fourth reason that the ALJ provides for discounting Dr. McAuliffe's opinion is valid. The ALJ describes that Dr. McAuliffe's opinion "did not factor into the analysis of the [Plaintiff]'s work activities and wide variety of daily activities, which do not support the severity of the doctor's opinions." Tr. 33. Earlier in the same section of his opinion, the ALJ describes these activities as follows:

> [Plaintiff] reports working and performing a wide variety of activities with her impairments. For instance, she noted that she worked at Marquis, which involved cleaning homes and providing caregiving activities, during the period she is alleging disability. The [Plaintiff] also states she prepares meals and washes laundry. She reports that she drives a car and shops in stores for food once every other week for one hour. The [Plaintiff] states that she can lift up to 20 pounds, and she has no problems walking. Lastly, she testified that she can walk one mile; she gets up between 4:00-6:00 AM to make coffee, takes a shower, and cleans her home; and, she goes on walks every day.

Tr. 31 (citations omitted).

Plaintiff argues that Dr. McAuliffe did consider these work and daily activities in making his assessment. Pl.'s Br. [12] at 8. But it is not apparent from Dr. McAuliffe's opinion that he did consider these specific activities, and Plaintiff does not point to any evidence in the record that shows otherwise. *See id.* at 7-8; Tr. 720-21. The regulations describe that a particular medical source's lack of familiarity with other evidence in the record is a valid factor to consider when discounting an opinion. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6), 404.1520c(c)(5), 416.920c(c)(5); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that a treating doctor's opinion was properly discounted in part because his opinion was "inconsistent with the level of activity" that the claimant had engaged in). Thus, the ALJ did not err in discounting Dr. McAuliffe's opinion for this reason.

In short, the third and fourth reasons that the ALJ provides for discounting Dr. McAuliffe's opinion each points to "specific evidence in the record" that legally justifies the ALJ's decision to give "limited weight" to Dr. McAuliffe's opinion. *Sousa*, 143 F.3d at 1244. Therefore, the ALJ did not commit harmful error. *See Carmickle*, 533 F.3d at 1162-63.

### 4. Dr. Ude's Opinion.

My analysis of the ALJ's decision to give "limited weight" to Dr. Ude's opinion proceeds in similar fashion to my analysis regarding Dr. McAuliffe's opinion. The ALJ provides three reasons for discounting Dr. Ude's testimony. I discuss each in turn.

First, the ALJ points out that Dr. Ude's opinion describes that "[Plaintiff] is not a reliable historian or credible reporter." Tr. 33, 722. And, therefore, "[u]fortunately, since much of [Dr. Ude's] opinion was based on [Plaintiff's] subjective statements the Dr. Ude opinion is of little [w]eight." Tr. 33. Plaintiff argues that the ALJ errs here for two reasons. One, she points out that

Dr. Ude reviewed objective medical evidence as well as subjective evidence. Pl.'s Br. [12] at 11. Two, Plaintiff argues that it is impermissible to discount a psychiatric opinion on a claimant's mental health just because it was based on subjective reporting. *Id.* (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)).

As was the case with Dr. McAuliffe's opinion, it is true that the medical records that Dr. Ude reviewed in forming her opinion contain objective medical evidence as well as subjective reporting from Plaintiff herself. A review of the mental health records Dr. Ude relied upon show that they include some medical signs and findings as well as observations made by treating and examining physicians. *See, e.g.*, Tr. 1010-92. But it is subjective reporting by Plaintiff that predominates. *See, e.g., id.* This comports with the ALJ's reasoning; he describes only that "much of [Dr. Ude's] opinion was based on [Plaintiff's] subjective statements." Tr. 33. The fact that Dr. Ude's opinion was based at least in part on some objective medical evidence does not show the ALJ erred in discounting it.

Plaintiff's latter argument—citing *Berryhill*—is stronger. To be sure, *Berryhill* cautions against discounting psychiatric evaluations merely because they rely on subjective reporting. 869 F.3d at 1049. More specifically, *Berryhill* commands that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology . . . ." *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 11121 (6th Cir. 1989)). But the ALJ here did not give limited weight to Dr. Ude's opinion because of the inherently subjective nature of psychiatric evaluations. He discounted it because it was based mostly on Plaintiff's subjective reporting and—crucially—because Dr. Ude herself described that Plaintiff's subjective reports were particularly unreliable. Tr. 33. Dr. Ude wrote that "[Plaintiff] reports much contradictory information" and is "not a reliable historian or a credible reporter." Tr. 722. She indicated this

limitation applied to all of her "diagnostic impressions." *See id.* (marking "(1-9)" next to her description of Plaintiff as unreliable; this appears to correspond to the nine "diagnostic impressions" listed above). Because the ALJ discounted Dr. Ude's opinion due to Plaintiff's described unreliability, and not because of the inherently subjective nature of psychiatric evaluations, I find he did not err. *Cf. Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (finding it proper to disregard a treating physician's opinion where "it was premised on [the claimant's] own subjective complaints, which the ALJ had already properly discounted").

As a second rationale for discounting Dr. Ude's opinion, the ALJ described that "[Dr. Ude] did not take into account [Plaintiff's] abilities if she followed up with consistent treatment for her impairments." Tr. 33. I agree with Plaintiff that this description is inaccurate. Dr. Ude's opinion does appear to take into account the possibilities of treatment. Dr. Ude described that "[w]ithout dual diagnosis counseling, [Plaintiff] will be very unlikely to either improve depression or achieve/maintain sobriety," and recommended that subsequent practitioners should "[m]ove forward slowly with this crisis-oriented individual whose recovery, if she is in recovery, is extremely new, and extremely fragile." Tr. 723. It was therefore error to rely on this rationale in discounting Dr. Ude's opinion.

Third and finally, the ALJ discounted Dr. Ude's opinion because Plaintiff's "work activities and wide variety of daily activities do not support the severity of the doctor's opinions." Tr. 33. If accurate, inconsistency with daily activities is a proper basis on which to discount a medical opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Plaintiff argues that the ALJ neither identifies the pertinent activities nor describes how they are inconsistent with the severity of Dr. Ude's opinion. Pl.'s Br. [12] at 11. However, I think it is clear that the work and daily activities to which the ALJ refers are the same ones he

describes earlier in the same section of his opinion, as I describe above in relation to Plaintiff's similar argument with respect to Dr. McAuliffe's opinion. *See* Tr. 31 (describing Plaintiff's work at Marquis, her shopping for food, her daily chores, etc.). And while it is true that the ALJ does not specifically describe how these activities are inconsistent with the severity of Dr. Ude's opinion, the ALJ performed essentially that exact analysis in his explanation at step two. *See* Tr. 25-26. At step two, the ALJ extensively describes how these same work and daily activities are probative of the severity of Plaintiff's mental health limitations. *Id.* For example, Plaintiff argues that Dr. Ude's opinion reveals that Plaintiff can only handle "limited or no interaction with the public or coworkers due to irritability and paranoia." Pl.'s Br. [12] at 12. But at step two the ALJ found that Plaintiff had only a "mild limitation" in "interacting with others," citing her work and daily activities as mitigating factors. Tr. 25. Thus, to the extent Dr. Ude found a more severe limitation along these dimensions, it is evident from context why the ALJ believed such a conclusion to be inconsistent with Plaintiff's activities. While the ALJ's opinion would have been clearer if he had reiterated his reasoning while discussing Dr. Ude's opinion, I do not think it was necessary for him to do so. Therefore, I find that the ALJ did not err in discounting Dr. Ude's opinion for this reason.

The ALJ's first and third rationales for discounting Dr. Ude's opinion each independently constitute "specific evidence in the record" to justify discounting the opinion of a non-treating, non-examining doctor. *Sousa*, 143 F.3d at 1244. The fact that the ALJ's second rationale was erroneous is not harmful. *See Carmickle*, 533 F.3d at 1162-63. Therefore, the ALJ properly discounted Dr. Ude's opinion by giving it "limited weight."

//

//

16 – OPINION AND ORDER

## B. The ALJ's Assessment of Plaintiff's Recent Work History.

Plaintiff's main remaining argument is that the ALJ erred by failing to properly assess her work activity. Pl.'s Br. [12] at 13-14. Plaintiff focuses on the ALJ's finding at step one that Plaintiff engaged in substantial gainful activity when she worked as a caregiver for Marquis at Home ("Marquis") from April 1, 2015, through June 30, 2015. *Id.*; Tr. 24. Plaintiff argues that the ALJ erred by not considering this work an "unsuccessful work attempt" per 20 C.F.R § 404.1574(a)(1). Pl.'s Br. [12] at 13. That regulation explains that "earnings from an unsuccessful work attempt will not show that you are able to do substantial gainful activity." 20 C.F.R. § 404.1574(a)(1). Performed work will be considered an unsuccessful work attempt "if, after you worked for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level . . . ." 20 C.F.R. § 404.1574(c).

As an initial matter, while Plaintiff claims that she was forced to reduce the amount of her work at Marquis due to her impairments, her citations to the record in support of this assertion only show that her work at Marquis was in fact reduced; they do not, however, say anything about her impairments causing her reduction in work. *See* Pl.'s Reply Br. [ECF 16] at 5 (citing Tr. 47-48, 181, 208-09). Thus, Plaintiff does not appear to have put forth sufficient evidence to show that her work at Marquis can be considered an unsuccessful work attempt. Nevertheless, I will assume *arguendo* that her work at Marquis should be considered an unsuccessful work attempt for the purposes of addressing her full argument.

Plaintiff deploys her "unsuccessful work attempt" argument not in the way one might expect—she does not use it to claim the ALJ erred at step one, and that the error at step one was

harmful.[2] Rather, Plaintiff argues that had the ALJ treated Plaintiff's work at Marquis as an unsuccessful work attempt, "he would not have used her work attempt as evidence that she could perform full-time work," and thus "would have most likely reached a different conclusion about her functional limitations." Pl.'s Br. [12] at 14.

This argument fails. As the Commissioner points out, the ALJ did not use Plaintiff's work at Marquis "as evidence that she could perform full-time work." Def.'s Br. [15] at 9 (quoting Pl.'s Br. [12] at 14). Rather, the ALJ relies on Plaintiff's time at Marquis—which occurred after her amended disability onset date—as evidence of activity that is inconsistent with the severity of Plaintiff's alleged limitations, much in the same way the ALJ relies on Plaintiff's daily activities. *Id.*; *see* Tr. 31-33. Plaintiff points to no authority that suggests an "unsuccessful work attempt" cannot be used as evidence of a claimant's abilities, even if it might not constitute substantial gainful activity. Regardless, even if it were true that Plaintiff could not continue her work at Marquis due to her impairments, that fact is not incongruous with the ALJ's use of her activity at Marquis. At the hearing before the ALJ, the vocational expert testified that Plaintiff's work at Marquis constituted "medium work." Tr. 57. In his RFC, the ALJ found that Plaintiff could perform "light work." Tr. 30. It is quite possible that Plaintiff cannot perform the level of work demanded by her job at Marquis, but is nonetheless capable of other, light work.

Thus, even if Plaintiff's work at Marquis should be considered an unsuccessful work attempt, Plaintiff has failed to make a cognizable argument that the ALJ erred in considering that work activity in the manner he did. And as stated, Plaintiff has cited insufficient evidence to

---

[2] Even if the ALJ committed error at step one, it was not harmful. The ALJ also found that there had been a continuous twelve-month period during which the Plaintiff did not engage in substantial gainful activity. The ALJ thus proceeded to step two. Tr. 24.

18 – OPINION AND ORDER

demonstrate that Plaintiff's work at Marquis was an unsuccessful work attempt in the first place. Therefore, the ALJ did not err in assessing Plaintiff's work activity.

## CONCLUSION

For the reasons stated above, I find that the ALJ did not commit harmful error and that his opinion was supported by substantial evidence. Accordingly, I AFFIRM the ALJ's finding of non-disability and the Commissioner's final decision to deny the award of benefits. This case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this __ day of November, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge